1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES D. BLUE                               )
                                            )
                    Plaintiff,              )        CASE NO. C06-0022-TSZ-MJB
                                            )
            v.                              )
                                            )
JO ANNE B. BARNHART,                        )        REPORT AND
Commissioner of Social Security            )        RECOMMENDATION
                                            )
                                            )
                    Defendant.              )
_____)

     Plaintiff James D. Blue appeals to the District Court from a final decision of the

Commissioner of the Social Security Administration (the "Commissioner") denying his

application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

disability benefits under Titles II and XVI of the Social Security Act.  For the reasons set forth

below, it is recommended that the Commissioner's decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

     Plaintiff applied for DIB and SSI, alleging disability since July 11, 2000 and identifying

his impairments as deafness, learning disabilities, and memory problems.  Tr. 96.  The

Commissioner denied Plaintiff's application initially (Tr. 44-47) and upon reconsideration (Tr.

REPORT AND RECOMMENDATION
PAGE - 1

50-54).  A hearing was held before Administrative Law Judge ("ALJ") Mary G. Dilley, on June 17, 2004.  Tr. 404-482.  Testimony was taken from, Plaintiff, represented by counsel; Norman A. Gustavson, Ph.D., a medical expert ("ME"); and Paul E. Prachyl, Ph.D., a vocational expert ("VE").  *Id.*  The ALJ issued an unfavorable decision on November 6, 2004, finding that Plaintiff was not disabled as defined in the Social Security Act because he could perform his past relevant work as a fast-food worker.  Tr. 30-41.

On November 8, 2005, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 9-11.  Plaintiff timely filed his appeal with this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision and remand for payment of benefits.  Dkt. #14.  Plaintiff argues that the ALJ erred by:  (1) improperly evaluating the medical evidence;  (2) improperly relying on the testimony of medical experts to reject the reports of treating physicians;  (3) failing to seek additional clarification from the medical experts who rejected reports of treating physicians; (4) improperly evaluating the lay witness testimony; (5) failing to find that the combination of Plaintiff's impairments did not equal a listing; and (6) improperly relying on the VE's testimony derived from an incomplete hypothetical.  *Id.*  Defendant responds that the ALJ's decision should be affirmed because it is supported by substantial evidence and is free of legal error.  Dkt. # 16.

## III.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

REPORT AND RECOMMENDATION
PAGE - 2

1    as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*,

2    881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving

3    conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d

4    1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational

5    interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*,

6    694 F.2d 639, 642 (9th Cir. 1982).

7                                     IV.  EVALUATING DISABILITY

8            The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d

9    1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial

10   gainful activity by reason of any medically determinable physical or mental impairment, which

11   can be expected to result in death, or which has lasted or can be expected to last for a

12   continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

13           The Social Security regulations set out a five-step sequential evaluation process for

14   determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20

15   C.F.R. § 416.920.  At step one, the claimant must establish that he or she is not engaging in any

16   substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the claimant

17   must establish that he or she has one or more medically severe impairments or combination of

18   impairments.  If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.*

19   at § (c).  At step three, the Commissioner will determine whether the claimant's impairment

20   meets or equals any of the listed impairments described in the regulations.  A claimant who

21   meets one of the listings is disabled. *See Id.* at § (d).

22           At step four, if the claimant's impairment neither meets nor equals one of the

23   impairments listed in the regulations, the Commissioner evaluates the claimant's residual

24   functional capacity and the physical and mental demands of the claimant's past relevant work.

25

26   REPORT AND RECOMMENDATION
     PAGE - 3

1     *Id.* at § (e).  If the claimant is not able to perform his or her past relevant work, the burden

2     shifts to the Commissioner at step five to show that the claimant can perform some other work

3     that exists in significant numbers in the national economy, taking into consideration the

4     claimant's residual functional capacity, age, education, and work experience.  *Id.* at § (f);

5     *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  If the Commissioner finds the claimant

6     is unable to perform other work, then the claimant is found disabled.

7                    V.  SUMMARY OF THE RECORD EVIDENCE

8     A.     Plaintiff's Background

9          Plaintiff was 32 years old at the time of the hearing before the ALJ.  Tr. 404-482.  He

10    has a twelfth grade education and he completed a year of computer training.  Tr. 102, 411-12.

11    Plaintiff's Disability Report indicates that he previously worked as a restaurant worker and shift

12    manager.  Tr. 97.  Plaintiff further testified that he also had prior work as a packager (Tr. 414),

13    nursing assistant (Tr. 416), dishwasher (Tr. 417) and temporary laborer (Tr. 418).  See also Tr.

14    463, 468-70.  Plaintiff last worked in the fast-food industry in June 2000.  Tr. 96-97.

15    Plaintiff indicates that he stopped working because he was unable to hear, unable to carry out

16    orders given to him, and he has a learning disability that keeps him from working.  Tr. 96.

17    Plaintiff volunteers approximately twenty-five hours per week at the Gospel Mission.  Tr. 428-

18    29.

19    B.     Medical Records

20          1.     *Examining Physicians' Opinions*

21          In September 2001, clinical psychologist James D. Czysz, Psy.D., evaluated and

22    diagnosed Plaintiff with a cognitive disorder, not otherwise specified, and ruled out specific

23    learning disabilities.  Tr. 260-64.  In December 2001, clinical psychologist Cassandra Clark,

24    Ph.D., evaluated and diagnosed Plaintiff with depression, not otherwise specified, specific

25

26    REPORT AND RECOMMENDATION
      PAGE - 4

phobia (performance anxiety), a cognitive disorder, not otherwise specified, and possible borderline intellectual disorder pending Wechsler Adult Intelligence Scale ("WAIS") testing. Tr. 251.

In May 2002, clinical psychologist David J. Mashburn, Ph.D., evaluated Plaintiff using the Wechsler Memory Scale-III, Trail Making A and B, and WAIS-III tests.  Tr. 198-200.  Dr. Mashburn diagnosed Plaintiff with: a cognitive disorder, not otherwise specified, with marked deficits in auditory memory when compared to visual; developmental arithmetic disorder; dysthymic disorder[1], early onset, chronic; borderline intellectual disorder; and schizoid personality disorder.  Tr. 200.  He estimated Plaintiff's Global Assessment of Functioning ("GAF") score as 45 (*Id.*), indicating serious symptoms or impairment in social, occupational, or school functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Medical Disorders* (*DSM-IV-TR*) 34 (4th ed. TR 2000).

In July 2002, Stephen T. Haney, M.D., completed a mental Residual Functional Capacity Assessment ("RAF") of Plaintiff.  Tr. 206-229.  Dr. Haney diagnosed Plaintiff with borderline intellectual disorder.  Tr. 220, 228.  Dr. Haney disputed Dr. Mashburn's diagnosis of schizoid personality disorder for lack of evidence and contrary to the Plaintiff's psychological record.  *Id.*  Dr. Haney also disputed Dr. Mashburn's diagnosis of dysthymia, as contrary to Plaintiff's subjective statements regarding his mood, which he described as "happy."  *Id.*  Dr. Haney concluded, "The claimant certainly has the cognitive ability to carry out very short and

---

[1]  Dysthymia, sometimes referred to as chronic depression, is a less severe form of depression but the depression symptoms linger for a long period of time, perhaps years. Those who suffer from dysthymia are usually able to function adequately, but seem consistently unhappy.  It is common for a person with dysthymia to also experience major depression at the same time - swinging into a major depressive episode and then back to a more mild state of dysthymia.  *http://www.webmd.com/content/article/62/71503.htm*

REPORT AND RECOMMENDATION
PAGE - 5

1   simple instructions.  There is no indication that he has any difficulty with interpersonal

2   interactions."  *Id.*

3        In December 2002, Charles D. Maurer, Ph.D. evaluated the Plaintiff using the Trail

4   Making A and B, the Shipley Institute of Living Scale, WAIS-III, and Wide Range

5   Achievement-3 tests.  Tr. 383-386.  Dr. Maurer diagnosed Plaintiff with dysthymia; reading and

6   mathematic disorders; probable post-traumatic stress disorder, chronic; and psychosocial and

7   environmental problems related to his primary support group, relationship with social

8   environment, education and occupational problems, housing, poverty, and chronic congenital

9   house issues.  Tr. 386.  Dr. Maurer concluded that Plaintiff was eligible for DVR services,

10   describing him as "highly motivated" and "very responsible."  *Id.*

11       2.    *Treating Physicians' Opinions*

12        On August 4, 2000, Plaintiff was diagnosed with Hidradenitis Suppurativa

13   ("Hidradenitis")[2] by physicians at Harborview Medical Center and has been symptomatic since.

14   Tr. 183, 185, 187.  Initially, Plaintiff was treated with topical and oral antibiotics.  Tr. 181-82.

15   Between October 3, 2000 and March 12, 2001, Plaintiff was seen on three occasions for

16   sequelae of hidradenitis, including: painful draining and bleeding "boils", cellulitis, fever, chills,

17   and sweats lasting longer than three days.  Tr. 173-74.

18        On August 7, 2002, Plaintiff successfully had two axillary cysts removed.  Tr. 204.  On

19   March 24, 2003, Plaintiff underwent a second surgery to excise the right axilla hidradenitis area

---

22     [2] "Hidradenitis Suppurativa is a common, potentially disabling dermatosis with a profound impact to
patients quality of life. The clinical presentation of the disease is characteristic and allows simple diagnosis. It has
23   been suggested that HS be described as inverse recurrent suppuration (IRS) as this sums up its clinical presentation
of recurrent lesions clinically resembling boils, unresponsive to conventional therapy, located to inverse areas. The
24   lesions are not cystic as with boils, which explains the lack of effect of simple lancing, nor do the patients have
lesions outside inverse areas." *http://www.hs-foundation.org/abouths/what.htm*

REPORT AND RECOMMENDATION
26   PAGE - 6

1   with application of an allograft.[3]  Tr. 333-24.  On March 28, 2003,  the allograft was removed

2   and an autograft[4] harvested from the Plaintiff's right thigh was applied.  *Id.*

3         Between November 2003 and February 2004, Plaintiff was seen by Kelly Barbour,

4   M.D., of Swedish Medical Center on approximately eleven occasions for worsening

5   Hidradenitis sequelae, including groin abscesses and bleeding.  Tr. 364-65, 368-374, 377-381.

6   On June 1, 2004, Dr. Barbour wrote that Plaintiff was diagnosed with several medical problems

7   including chronic, but treatable, Hidradenitis.  Tr. 387.  Dr. Barbour stated that the condition

8   could cause constant problems with hygiene, secondary to skin infections/ abscesses, and may

9   require the Plaintiff to take several medications and attend appointments to control the impact

10  of the ailment.  *Id.*

11        On July 13, 2004, Gloria Fann, M.D., of Swedish Medical Center wrote a supplement to

12  Dr. Barbour's letter.  Tr. 389-90.  Dr. Fann stated that Plaintiff had cognitive deficits that

13  limited his employment options to jobs involving physical labor, but that such work exacerbates

14  Plaintiff's condition, increasing his need for medical intervention and worsen his living and

15  financial situations.  *Id.*  Dr. Fann specifically disputes the possibility that Plaintiff could work in

16  the fast food industry given his condition, citing environmental issues as well as limited mobility

17  and/or range of motion.  *Id.*

18  //

19  //

----

21  [3]  A transplant from one person to another. Allografts account for many human transplants, including those from cadaveric, living related, and living unrelated donors.  Called also an allogenic graft or a homograft.  *http://www.medterms.com/script/main/art.asp?articlekey=3094*

23  [4]  Tissue transplanted from one part of the body to another in the same individual.  Also called an autotransplant.  *http://www.medterms.com/script/main/art.asp?articlekey=40486*

REPORT AND RECOMMENDATION
PAGE - 7

On March 21, 2001, Plaintiff was diagnosed with moderate to severe hearing loss in both ears.  Tr. 197.  Other evidence relevant to Plaintiff's claims is incorporated into the discussion below.

C.      Medical Expert's Opinion

Dr. Norman Gustavson testified that the most consistent of Plaintiff's diagnoses on record was cognitive disorder, citing Dr. Mashburn's WAIS testing and Dr. Mauer's Trails A and B, WRAT, and Shipley Institute of Living Scale testing.  Tr. 46.  Dr. Gustavson, citing Plaintiff's overall history, concluded that while he suffers from social and personality problems, he was not unemployable on psychological grounds.  Tr. 456.  Furthermore, Dr. Gustavson concluded that the Plaintiff could perform simple routine work and complex tasks if they were taught by demonstration or on-the-job training.  Tr. 457.

## VI.  THE ALJ'S DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.  Tr. 34, 40.  The ALJ found that Plaintiff has severe impairments consisting of a cognitive disorder, personality disorder, bilateral hearing loss, and Hidradenitis. Tr. 34, 40.  The ALJ determined that these impairments did not meet or equal the criteria of any listing in 20 C.F.R. Pt. 404, Subpt. P, App.1.  Tr. 34, 40.  The ALJ found that Plaintiff has the residual functional capacity to perform all exertional levels of work.  Tr. 39, 40.  Specifically, the Plaintiff could perform simple tasks and those complex ones learned through demonstration and on the job training.  *Id.*  However, the Plaintiff should avoid extreme temperatures, wetness, humidity, and noise.  *Id.*  Lastly, the ALJ concluded that Plaintiff is able to perform his past work as a fast food worker, or other relevant work.  Tr. 39, 40, 474, 480.

In reaching this conclusion, the ALJ found that Plaintiff's testimony concerning his impairments was generally credible but Plaintiff's impairments are not so severe as to preclude

REPORT AND RECOMMENDATION
PAGE - 8

1   all work activity. Tr. 35. Accordingly, the ALJ concluded that Plaintiff was not disabled at any

2   time during the relevant period. Tr. 41.

3                                    VII. DISCUSSION

4   A.       Medical Opinions

5           Plaintiff argues that the ALJ improperly evaluated and rejected medical evidence of his

6   mental and physical impairments without adherence to proper legal standards. Dkt # 14.

7   Plaintiff maintains that the ALJ erroneously relied upon the testimony of the ME to reject the

8   reports of the treating and examining physicians without stating clear and convincing reasons

9   and in absence of substantial evidence in the record as a whole. *Id.* Defendants maintain that

10  the ALJ properly resolved conflicting treating physician opinions in light of medical evidence

11  and that Dr. Gustavson's opinion constitutes substantial evidence because it is consistent with

12  psychological evidence in the record. Dkt. #16.

13          The Commissioner must provide "clear and convincing reasons" for rejecting the

14  uncontradicted opinion of an examining or treating physician. *Lester v. Chater*, 81 F.3d 821,

15  830 (9th Cir. 1996) *(*citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1999)); *Matthews v.*

16  *Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (*citing Montigo v. Sec. of Health & Human Servs.*,

17  729 F.2d 599, 601 (9th Cir. 1984)). The opinion of a treating or examining doctor, even if

18  contradicted by another doctor, can only be rejected for specific and legitimate reasons that are

19  supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31 (*citing Andrews v.*

20  *Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

21  1983).

22          1. *Examining Physicians' Opinion*

23          Plaintiff argues that  that the ALJ either ignored or ambiguously and insufficiently

24  weighed the opinions of examining physicians and instead, deferred to the ME. Dkt. #14. at 9,

25

26  REPORT AND RECOMMENDATION
    PAGE - 9

1  10, 11, 13, *citing* Tr. 447-461, 458.  He argues that the ALJ mostly ignored Dr. Czysz's

2  opinion.  *Id.* at 9.  He argues that Dr. Clark's opinion was considered only to the extent that it

3  was consistent with the ME's opinion, which resulted in the exclusion of a significant portion of

4  the opinion derived from Plaintiff's subjective statements.  *Id.* at 10 *citing* Tr. 36, 459.  He

5  argues that Dr. Mashburn's opinion was rejected as outdated and without citing to any specific

6  and legitimate conflicting evidence, namely the ALJ failed to account for the Plaintiff's low IQ

7  scores on Dr. Mashburn's tests.  *Id.* at 11.  Finally, Plaintiff argues that Dr. Maurer's diagnosis

8  of a learning disability was rejected without citing any specific and legitimate evidence.  *Id.* at

9  13.

10        Among the four examining psychologists, the ALJ found a consensus of psychological

11  opinions with respect to the diagnoses of: cognitive disorder, not otherwise specified (*citing* Tr.

12  198-200, 251, 260-64); chronic mild or moderate depression (*citing* Tr. 251, 383-86); and

13  borderline intellectual disorder (*citing* Tr. 198-200, 220, 228, 383-86).  Tr. 35-38.

14        The ALJ considered the individual examining psychologists' opinions in light of the

15  consensus.  The ALJ gave weight to Dr. Czysz's opinion that Plaintiff had mild limitations in

16  cognition.  Tr. 35 *citing* Tr. 260-63.  Dr. Clark's opinion was given weight to the extent that it

17  was supported by objective examination, which also indicated mild cognitive impairment of

18  Plaintiff.  Tr. 36 *citing* Tr. 251.  The ALJ rejected that portion of Dr. Clark's opinion that was

19  inconsistent with the Plaintiff's other test results and based upon Plaintiff's subjective

20  statements, namely the diagnosis of moderate difficulty with social and cognitive functioning,

21  and marked limitations in tolerating work pressures.  *Id.*  Additionally, the ALJ gave weight to

22  Dr. Maurer's recommendation of Plaintiff for vocational rehabilitation.  Tr. 36 *citing* 383-86.

23  Dr. Maurer stated that despite Plaintiff's mild-moderate depression and learning disability, he

24  could perform simple tasks and would do well in with on-the-job training.  *Id.*

25

26  REPORT AND RECOMMENDATION
PAGE - 10

1   The ALJ rejected that portion of Dr. Mashburn's opinion that was inconsistent with the

2   Plaintiff's other examination results, namely his diagnosis of severe social and occupational

3   impairment.  Tr. 35 *citing* 198-200.  The ALJ also rejected Dr. Mashburn's opinion of

4   Plaintiff's intelligence as based upon subjective analysis, contrary to the majority of test results,

5   and taken when Plaintiff lacked hearing aids and was lip reading.  Tr. 35 *citing* 198-200.

6   Having reviewed the psychological evidence in the record as whole, the Court concludes

7   that the ALJ properly considered conflicting diagnoses regarding the severity of Plaintiff's

8   psychological impairments.  When presented with conflicting psychologists' opinions, the ALJ

9   resolved the conflict by analyzing the opinions in light of the majority of consistent and

10   substantial psychological evidence.  The ALJ cited specific, rational, and legitimate reasons for

11   rejecting ambiguities as unsupported by the medical record and lacking objective analysis.

12   Therefore, the ALJ did not err in his evaluation of the evidence related to Plaintiff's mental

13   impairments.

14       2.  *Treating Physicians' Opinion*

15   Plaintiff argues that the ALJ rejected Dr. Barbour and Dr. Fann's opinions regarding  his

16   physical impairments without citing to any specific and legitimate conflicting evidence.  Plaintiff

17   contends that the ALJ improperly cited Dr. Barbour's prior treating records as contradictory to

18   the later expanded opinions of Dr. Fann.  Dkt. #14 at 13.

19   The ALJ considered Dr. Barbour's opinion, noting improvement in Plaintiff's condition

20   and that Dr. Barbour did not endorse disability.  Tr. 37.  The ALJ rejected Dr. Fann's diagnosis

21   as contrary to Dr. Barbour's opinion and medical evidence as a whole.  Tr. 37.  Additionally,

22   the ALJ noted that Dr. Fann did not endorse complete disability.  *Id.*

23   Based upon medical evidence of the record as whole, the Court finds that the ALJ

24   properly considered and resolved conflicting opinions regarding the severity of Plaintiff's

25

26   REPORT AND RECOMMENDATION
    PAGE - 11

1   physical condition by analyzing said opinions in light of the treatment record. Dr. Fann's

2   diagnosis is unsupported and contrary to the medical record. While Dr. Barbour discussed

3   complications of the Plaintiff's conditions, she did not endorse disability. Conversely, Dr.

4   Fann's opinion, which was proffered less than six weeks after Dr. Barbour's, substantially

5   expanded the physical limitations of the Plaintiff and implied disability without any new

6   supporting medical evidence. It is reasonable that the ALJ would defer to Dr. Barbour's

7   diagnosis as her opinion was based on a substantial history of examinations dating back to 2003.

8   The ALJ has cited specific and legitimate reasons for rejecting Dr. Fann's opinion.

9       The ALJ's determination that Dr. Fann's opinion does not endorse complete disability is

10  equally persuasive. Dr. Fann's opinion permits work limited to or involving physical labor, so

11  long as such labor does not aggravate Plaintiff's condition, citing adverse environmental

12  conditions that induce sweating. Dr. Fann only explicitly rejected Plaintiff's ability to work in

13  the fast food industry. Also, the ALJ has provided alternative jobs that accommodate Plaintiff's

14  condition, namely jobs with limited exposure to aggravating environmental conditions such as a

15  parking lot cashier or office helper. Tr. 40.

16      3.   *Medical Expert's Opinion*

17      Plaintiff argues that the ME was unable to provide a precise rationale for disagreeing

18  with examining and treating physicians' opinions. Consequently, the ALJ should have accepted

19  the opinions, ordered a further evaluation of Plaintiff, or consulted with the physicians to clarify

20  the basis for their opinions. Dkt. #14 at 15, 16.

21      Social Security Ruling 96-6p provides that an ALJ cannot ignore the opinions of State

22  agency physicians, and must explain the weight given to these opinions in their decisions. The

23  opinions of State agency consultants can be given weight only insofar as they are supported by

24

25  REPORT AND RECOMMENDATION
26  PAGE - 12

1    evidence in the case record, including any evidence received at the ALJ level that was not before

2    the State agency.  SSR 96-6p

3        Dr. Gustavson rejected Dr. Mashburn's assessment of Plaintiff's intelligence quotient

4    ("IQ") scores as inaccurately low.  Tr. 451.  He cited contrary results of Dr. Mauer's Trails A

5    and B and Shipley Institute of Living Scale testing. *Id.*  He stated that Trails A and B and

6    Shipley Institute of Living Scale would provide a more accurate assessment.  Tr. 452.  He also

7    cited the relative ease by which one could get a low IQ score on the WAIS test.  *Id.*  Finally, Dr.

8    Gustavson stated that Plaintiff's memory problems may be a result of academic deficiencies,

9    secondary to his hearing impairment.  Tr. 453.

10        Dr. Gustavson also rejected Dr. Mauer's diagnosed learning disability, citing score

11    discrepancies between the IQ , ability, and achievement.  Tr. 454-55.  Dr. Gustavson also

12    rejected Dr. Mashburn's evaluation of Plaintiff's schizoid personality disorder, stating that there

13    was nothing in the record that would substantiate such a diagnosis.  Tr. 455.  He further stated

14    that there was nothing about Plaintiff's demeanor or speech that would suggest schizoid

15    personality.  Tr. 456.  Such a condition Dr. Gustavson stated, is exemplified by incredible

16    isolation or withdrawal and a complete or marginal inability to function socially.  *Id.*

17        Finally, Dr. Gustavson rejected any significant problems with Plaintiff's depression,

18    stating that there was insufficient supporting evidence in the record and/or that Plaintiff likely

19    experiences low moods associated with frustration and chronic pain.  Tr. 458-59.

20        The Court further finds that the ALJ did not erroneously rely upon the testimony of Dr.

21    Gustavson to reject the reports of the treating and examining physicians.  Dr. Gustavson stated

22    clear and convincing reasons for rejecting the reports of particular treating and examining

23    physicians, citing substantial evidence in the medical record.  Each of Dr. Gustavson's rejections

24    of treating physician opinions were supported by other treating physicians' contradictory

25

26    REPORT AND RECOMMENDATION
     PAGE - 13

1   opinions.  Dr. Czysz's Cognistat test ruled out specific learning disabilities, contrary to Dr.

2   Mauer's assessment.  Tr. 260-64.  Dr. Haney disputed Dr. Mashburn's diagnosis of schizoid

3   personality disorder and dysthymia.  Tr. 228.

4   B.   Lay Witness Testimony

5          Plaintiff argues that the ALJ improperly failed to give any weight to Chaplain George

6   Bradford's testimony and failed to state specific and legitimate reasons for her actions.  Dkt.

7   #14.  Defendants argue that the ALJ properly rejected the testimony of Chaplain George

8   Bradford as inconsistent with other evidence, namely Plaintiff's computer training and ability to

9

10  read.  Dkt. #16.

11         An ALJ must consider a lay witness' observations of how the claimant's impairment

12  affects his ability to work.  20 C.F.R. § 404.1513(e)(2); *Smolen v. Chater*, 80 F.3d 1273, 1288

13  (9th Cir. 1996).  An ALJ may reject such testimony only if "reasons germane to each witness"

14  are given.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

15         George Bradford serves as chaplain and "psyche nurse" for the Union Gospel Mission

16  where Plaintiff has lived since 1993.  Dkt. #14 at 16.  The sole basis of Chaplain Bradford's

17  "testimony" is surmised from a daily living and activity questionnaire which was directed to and

18  answered by the Plaintiff.  Tr. 109-114; *Ex. 3E*.  Chaplain Bradford scribed Plaintiff's responses

19  and commented only on Plaintiff's participation in the Martin Career Education Center.  Tr. 112

20  at #24.  The ALJ acknowledged that Chaplain Bradford indicated that Plaintiff was trying to use

21  a computer but could not apply what he had learned in class.  Tr. 38-39.  Here, the ALJ stated

22  that more weight was given to Plaintiff's successful completion of the computer class and that

23

24  Plaintiff knew how to read and perform basic math skills, than to the opinion of Chaplain

25

26  REPORT AND RECOMMENDATION
    PAGE - 14

Bradford as the class work was outside Plaintiff's mission dependent relationship.  Tr. 39.

The Court generally finds no basis to characterize the questionnaire as testimonial statements of Chaplain Bradford because, with the exception of question twenty-four, the questionnaire contains Plaintiff's first-person responses.  Moreover, to the extent that Chaplain Bradford provides his opinion in question twenty-four, the Court finds that the ALJ provided relevant and appropriate reasons for rejecting this statement.

C.    RFC Assessment

Plaintiff argues that the ALJ improperly relied on vocational expert testimony which failed to consider the limitations acknowledged by the ALJ, substantiated by the record, and identified by the vocational expert.  Dkt. #14.  Specifically, Plaintiff argues that the ALJ's hypothetical failed to adequately consider environmental condition restrictions because of Plaintiff's physical impairments, and it failed to adequately consider likely absences and "tardies" (sic) for likely medical appointments needed to treat his chronic condition.  *Id., citing* Tr. 478-480.

Defendants argue that the ALJ's RFC assessment is supported by substantial evidence, including proper reliance on vocational expert testimony.  Dkt. #16.  Defendants contend that the vocational expert reached his conclusions based on complete hypothetical questions supported by substantial medical evidence and the ALJ properly disregarded vocational expert testimony premised on unsupported limitations.  *Id.*

A claimant's RFC is based on what she can still do despite her limitations.  *See* 20 C.F.R. § 416.945(a) (2001).  At the hearing level, the ALJ evaluates a claimant's RFC at step four of the sequential evaluation process by considering all of the evidence, including any

physical and mental limitations. *See* 20 C.F.R. § 416.945(a)(b)(c), 416.946, and SSR 96-8p.

SSR 96-8p provides that "[t]he RFC assessment considers only functional limitations and

restrictions that result from an individual's medically determinable impairment or combination of

impairments, including the impact of any related symptoms." The ALJ is free to accept or reject

restrictions that the claimant alleges provided his findings are supported by substantial evidence.

*Magallanes*, 881 F.2d at 756-57.

The Social Security Regulations require that the ALJ undertake a "function-by-function"

analysis of the claimant's capacity to work according to exertional categories.

> The RFC assessment must first identify the individual's functional limitations or
> restrictions and assess his or her work-related abilities on a function-by-function
> basis, including the functions in paragraphs (b), (c) and (d) of 20 C.F.R.
> 404.1545 and 416.945. Only after that may RFC be expressed in terms of the
> exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p.

In this case, the ALJ asked Dr. Paul Prachyl whether a twenty-seven year-old, with a

high school education, similar vocational training in computers as the Plaintiff, having basic

skills in reading and mathematics, having no exertional limitations, but who must avoid

concentrated exposure to extreme heat, wetness, humidity, and noise, could perform any of the

past work of Plaintiff's. Tr. 470. Dr. Prachyl stated that is was reasonably possible that such an

individual could perform Plaintiff's prior work as hand packager depending upon the noise level

of the facility. Tr. 470. Dr. Prachyl also stated that such an individual could perform Plaintiff's

prior work as a nurse's assistant, fast food worker and manager, considering fourteen

environmental factors, specifically moderate noise level exposure of a fast food worker and

REPORT AND RECOMMENDATION
PAGE - 16

1    manager.  Tr. 471-72.

2         Additionally, the ALJ asked whether the same individual, who is able to perform

3    complex tasks, if learned through demonstration and on the job training, could perform any of

4    the past work of the Plaintiff.  Tr. 473.  Dr. Prachyl stated that such an individual could

5    perform Plaintiff's prior work as a nurse's assistant, fast food worker and manager, and hand

6    packager.  *Id.*

7

8         Lastly, the ALJ asked whether the same individual, who is able to perform simple,

9    routine, one and two step tasks, could perform any of the past work of the Plaintiff.  Tr. 473.

10   Dr. Prachyl stated that such an individual could not perform Plaintiff's prior work as a nurse's

11   assistant and fast food manager, but could work as a hand packer and fast food worker.  *Id.*

12        The Court finds that the ALJ's RFC assessment is supported by substantial evidence,

13   including the VE's testimony.  The ALJ's hypothetical questions to the VE sufficiently

14   considered Plaintiff's mental and physical limitations as supported by the records and the ALJ's

15   hypothetical questions incorporated environmental limitation to prevent aggravation of the

16   Plaintiff's condition, which is consistent with Dr. Fann's opinion.  Likewise, the ALJ's

17   hypothetical questions are consistent with Dr. Haney and Dr. Gustavson psychological opinions

18   that the Plaintiff could perform simple tasks and complex tasks if learned by demonstration or

19

20   on-the-job training.

21   D.    Combined Effects of Plaintiff's Impairments

22        Plaintiff argues that the ALJ failed to consider whether combinations of his impairments

23   equaled a listing impairment.  Dkt. # 14 at 19.  Defendants argue that since  Plaintiff failed to

24   offer evidence to establish that the combined effects of his impairments equaled a listing, the

25
     REPORT AND RECOMMENDATION
26   PAGE - 17

ALJ was not required to discuss those combined effects or compare them to a listing when determining equivalency.  Dkt. # 16 at 14.

When the claimant has more than one impairment, the Commissioner must determine whether the combination of impairments is medically equivalent to any listed impairment.  20 C.F.R. 404.1526(a).  However, the "ALJ is not required to the discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, *unless* the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); *distinguishing Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990)(the ALJ's failure to consider equivalence held as reversible error because the claimant offered a theory as to how his combined impairments equaled a listing impairment).

The Court disagrees in part with the Commissioner's argument.  Plaintiff has offered a theory and evidence as to how the combined effects of his condition equal a listing impairment. Plaintiff offered Dr. Fann's opinion, who stated, "Mr. Blue has a complicated set of medical, cognitive, and emotional issues that contribute to his disability status."  Tr. 389.  However, the Court concludes that the ALJ properly considered the combined effects of Plaintiff's impairments.  This is evident in the hypothetical she posed to the VE, which included both mental limitations (high school education, basic skills in reading and mathematics, vocational training in computers) and physical limitations (twenty-seven year-old, no exertional limitations, who must avoid concentrated exposure to extreme heat, wetness, humidity, and noise).  *See* Tr. 470.  Therefore, the ALJ did not err in concluding that Plaintiff's condition did

REPORT AND RECOMMENDATION
PAGE - 18

not equal a listing impairment.

## VIII.  CONCLUSION

The Commissioner's determination to deny Plaintiff SSI benefits is supported by substantial evidence and is free of legal error.  Based on the record evidence, the undersigned recommends that the Commissioner's decision be AFFIRMED.  A proposed Order accompanies this Report and Recommendation.

DATED this   19th   day of January, 2007.

Monica J. Benton
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 19